[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15725

_____

D.C. Docket No. 2:14-cr-00083-SPC-DNF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE GABRIEL GARCIA-MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 11, 2017)

Before ED CARNES, Chief Judge, ANDERSON, Circuit Judge, and
ROSENBERG,[*] District Judge.

ED CARNES, Chief Judge:

_____

[*] Honorable Robin L. Rosenberg, United States District Judge for the Southern District of
Florida, sitting by designation.

Jose Gabriel Garcia-Martinez pleaded guilty to illegal reentry after deportation in violation of 8 U.S.C. § 1326(a), (b)(2) and was sentenced to 36 months imprisonment.  He appeals his sentence, contending that the district court erred by applying a 16-level enhancement under United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii) (2014) for reentering the United States after having been deported for a "crime of violence."[1]  His purported "crime of violence" was a Florida conviction for second degree burglary of a dwelling.

## I.

In 2009 Garcia-Martinez, a Mexican citizen who was in the United States illegally, was convicted in Florida of second degree burglary of a dwelling under Florida Statute § 810.02(3).  Florida defines burglary as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein . . . or . . . [n]otwithsanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance" with the intent to commit an offense or a forcible felony.  Fla. Stat. § 810.02(1)(b).  As relevant to this case, a second degree burglary is one in which:

> in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:

---

[1] Garcia-Martinez also contends that his sentence is unconstitutional because the statutory maximum penalty was increased from 2 years to 20 years based on a conviction not charged in the indictment.  As he concedes, however, that argument is foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998).

2

(a) Dwelling, and there is another person in the dwelling at the time the offender enters or remains;

(b) Dwelling, and there is not another person in the dwelling at the time the offender enters or remains . . . .

Id. § 810.02(3)(a)–(b).  Florida defines a "dwelling" as "a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof."  Id. § 810.011(2) (emphasis added).

After his Florida conviction for second degree burglary of a dwelling, Garcia-Martinez was removed from the United States in 2010 and ordered not to enter, attempt to enter, or be in the United States for the rest of his life.  Despite his removal, on June 16, 2014 immigration agents found Garcia-Martinez in a Florida jail after he had been arrested for battery.  He was charged with and pleaded guilty to illegal reentry after deportation.

The presentence investigation report, using the 2014 version of the United States Sentencing Guidelines (which is also the version that we use in this appeal), assigned a base offense level of 8 under § 2L1.2(a), a 16-level increase under § 2L1.2(b)(1)(A)(ii), and a 3-level reduction for acceptance of responsibility, yielding a total offense level of 21.  The PSR explained that the 16-level increase under § 2L1.2(b)(1)(A)(ii) was warranted because Garcia-Martinez's Florida

3

conviction for second degree burglary of a dwelling counted as a crime of violence.

The district court, over Garcia-Martinez's objection, concluded that based on the facts described in the PSR, Garcia-Martinez's charging document, and his state court judgment, Garcia-Martinez's conviction counted as a crime of violence under § 2L1.2. The court adopted the PSR without change, meaning that Garcia-Martinez faced an advisory guidelines range of 41 to 51 months imprisonment, but the court varied downward and imposed a sentence of 36 months imprisonment.

## II.

We review de novo whether a defendant's prior conviction is for a "crime of violence" under § 2L1.2(b)(1)(A)(ii). United States v. Estrada, 777 F.3d 1318, 1321 (11th Cir. 2015). Section 2L1.2(b)(1)(A)(ii) states that the court must increase the defendant's offense level by 16 levels "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence."

The commentary to § 2L1.2 defines a "crime of violence" as:

[A]ny of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

4

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added).  "[A] felony conviction qualifies as a crime of violence under § 2L1.2 if either (1) the defendant was convicted of one of the enumerated offenses; or (2) the use, attempted use, or threatened use of physical force was an element of the offense."  United States v. Palomino Garcia, 606 F.3d 1317, 1326 (11th Cir. 2010).  We refer to the first part of the definition as the enumerated offenses clause and the second part as the elements clause.  Because it is clear that Florida second degree burglary of a dwelling does not count under § 2L1.2's elements clause, see Fla. Stat. § 810.02(3), the decisive question is whether it counts under § 2L1.2's enumerated offenses clause.[2]

To answer that question, we use the framework the Supreme Court has set out for determining whether a conviction under a state or federal statute counts as a predicate offense for purposes of the Armed Career Criminal Act (ACCA).  The ACCA calls for an enhanced sentence when a defendant has three or more convictions for crimes that qualify as predicate offenses.  18 U.S.C. § 924(e)(1). One type of qualifying offense is a "violent felony."  Id. § 924(e)(2)(B)(ii). Although § 2L1.2 defines a crime of violence for guidelines enhancement purposes differently from how the ACCA defines a violent felony, we have used the

---

[2] Because Garcia-Martinez was convicted of second degree burglary, we do not consider whether Florida's first degree burglary statute would count as a crime of violence under § 2L1.2's elements clause.

framework for determining whether a conviction qualifies under the ACCA to decide whether one qualifies under § 2L1.2.  See, e.g., United States v. Ramirez-Flores, 743 F.3d 816, 820–21 & n.2 (11th Cir. 2014); United States v. Ramirez-Garcia, 646 F.3d 778, 782–83 (11th Cir. 2011); United States v. Krawczak, 331 F.3d 1302, 1306 (11th Cir. 2003).  We do so again in this case.

The first step is to determine the generic definition of the enumerated offense.  See Taylor v. United States, 495 U.S. 575, 598–99, 110 S. Ct. 2143, 2158 (1990).  Then the court must use the "categorical approach" to compare the statute under which the defendant was convicted to the generic offense.  Id. at 599–602, 110 S. Ct. at 2158–60.  In doing that a court may look at only the elements of the statute of conviction and not at the underlying facts of the offense.  Id.; cf. United States v. Gundy, 842 F.3d 1156, 1161 (11th Cir. 2016) ("[F]ocusing on the elements of the statute of conviction is, and always has been, the essential principle governing ACCA cases.").  If the statute's elements are the same or narrower than those in the generic definition, the statutory offense qualifies.  Taylor, 495 U.S. at 599, 110 S. Ct. at 2158; Descamps v. United States, 570 U.S. __, 133 S. Ct. 2276, 2283 (2013).

A conviction cannot categorically qualify as a predicate offense if the conviction was for violating a statute that is broader than the generic definition of the enumerated offense.  Descamps, 133 S. Ct. at 2283; Gundy, 842 F.3d at 1162.

If that is the situation, the court must decide whether it is appropriate to use what is called the "modified categorical approach" and look at "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Mathis v. United States, 579 U.S. __, 136 S. Ct. 2243, 2249 (2016).  It is only appropriate to use the modified categorical approach if the statute at issue is "divisible," or "comprises multiple, alternative versions of the crime." Descamps, 133 S. Ct. at 2284; accord Mathis, 136 S. Ct. at 2249 (describing a divisible statute as one that "list[s] elements in the alternative, and thereby define[s] multiple crimes").  If the statute is "indivisible," meaning that it "sets out a single (or 'indivisible') set of elements to define a single crime . . . . no conviction under that law could count as [a] . . . predicate." Mathis, 136 S. Ct. at 2248–49.

## A.

While § 2L1.2 counts "burglary of a dwelling" as a predicate offense, U.S.S.G. § 2L1.2 cmt. n.1(B)(iii), the ACCA counts "burglary" as a predicate offense, 18 U.S.C. § 924(e)(2)(B)(ii).  In Taylor the Supreme Court held that the generic definition of burglary, as used in the ACCA, is the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599, 110 S. Ct. at 2158.  But that definition is not the end of our inquiry because, unlike the ACCA, § 2L1.2 specifies that the offense

must be "burglary of a dwelling."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added); see United States v. Ramirez, 708 F.3d 295, 301 (1st Cir. 2013) ("We disagree that Taylor's strict definition of 'generic burglary' automatically dictates the Guidelines' definition of 'burglary of a dwelling.'"); United States v. Rivera-Oros, 590 F.3d 1123, 1129 (10th Cir. 2009) ("[S]ince the Supreme Court's decision in Taylor was based on the ACCA's language and purpose, we conclude that Taylor's definition of generic burglary does not dictate the result in this case."); United States v. Murillo-Lopez, 444 F.3d 337, 344–45 (5th Cir. 2006) (stating that the Supreme Court's formulation of generic burglary in Taylor is "instructive" but "does not strictly apply to the specific offense 'burglary of a dwelling' as used in the Guidelines").[3]

So we face this question:  What is the generic definition of a dwelling?  In United States v. Ray, 245 F.3d 1256, 1257 (11th Cir. 2001), we followed the Third Circuit's decision in United States v. McClenton, 53 F.3d 584 (3d Cir. 1995), to hold that a hotel guest room counts as a dwelling under the guidelines.  The McClenton decision relied in part on the definition given in the sixth edition of

---

[3] The distinction between burglary under the ACCA and burglary of a dwelling under the sentencing guidelines is also the reason why our recent decision in United States v. Esprit, 841 F.3d 1235 (11th Cir. 2016), does not resolve this appeal.  In Esprit we held that "Florida's burglary statute creates a single indivisible crime that includes non-generic burglary," meaning that "no conviction under Florida's burglary statute . . . can serve as an ACCA predicate offense."  Id. at 1241.  But the question in this case is whether a conviction for burglary of a dwelling under Florida law can serve as a § 2L1.2 crime of violence, which is defined differently from violent felony in the ACCA.

Black's Law Dictionary.  McClenton, 53 F.3d at 587.  That definition of dwelling is "a building or portion thereof, a tent, a mobile home, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." Dwelling, Black's Law Dictionary (6th ed. 1990). Our circuit and the Third are not the only two to have used that definition.  The First, Fifth, Sixth, Eighth, and Tenth Circuits have also used it, or a substantially similar definition from a later edition of Black's Law Dictionary.[4]   Ramirez, 708 F.3d at 303; United States v. McFalls, 592 F.3d 707, 712–14 (6th Cir. 2010); Rivera-Oros, 590 F.3d at 1131–32; Murillo-Lopez, 444 F.3d at 345; United States v. Graham, 982 F.2d 315, 316 (8th Cir. 1992).

Using the Black's Law Dictionary definition of dwelling, generic burglary of a dwelling under § 2L1.2 is both narrower and broader than generic burglary under the ACCA.  It is narrower because a conviction for burglary of a building or structure like a store, which would qualify as a violent felony under the ACCA, would not qualify as a crime of violence under § 2L1.2 because a store is not a

---

[4] For example, the tenth edition defines a "dwelling-house" as used in criminal law as:

> [a] building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation.  The term has referred to connected buildings in the same curtilage but now typically includes only the structures connected either directly with the house or by an enclosed passageway. Often shortened to dwelling.

Dwelling-house, Black's Law Dictionary (10th ed. 2014); see also Rivera-Oros, 590 F.3d at 1131–32 (discussing the ninth edition definition).

dwelling. At the same time, it is broader because a conviction for burglary of something like a houseboat, which would not count as a violent felony under the ACCA because a vessel is not a "building or structure," see Taylor, 495 U.S. at 599, 110 S. Ct. at 2158–59, would count as a crime of violence under § 2L1.2 since a houseboat is an "enclosed space which is used or intended for use as a human habitation, home or residence."

The Ninth Circuit has rejected the Black's Law Dictionary definition of dwelling for guidelines purposes. United States v. Wenner, 351 F.3d 969, 973 (9th Cir. 2003). Instead, it has held that burglary of a dwelling under the guidelines should be defined using "the Taylor definition of burglary, with the narrowing qualification that the burglary occur in a dwelling," id., which "must involve a building or other structure," id. at 972 (quotation marks omitted). But Taylor was, of course, an ACCA case, not a guidelines case. The Fourth Circuit has also construed burglary of a dwelling under the guidelines to mean generic burglary, as defined in Taylor, "with the additional requirement that a burglary qualifying as a 'crime of violence' must involve a dwelling." United States v. Bonilla, 687 F.3d 188, 190 n.3 (4th Cir. 2012). Under the Fourth Circuit's definition, a dwelling cannot be a "boat, motor vehicle, or other enclosure that is excluded from the definition of generic burglary." United States v. Henriquez, 757 F.3d 144, 147 (4th Cir. 2014).

We are not convinced by the Fourth and Ninth Circuit's reasoning. Instead, we find the reasoning of the Third and Tenth Circuits more persuasive. The Tenth Circuit in its <u>Rivera-Oros</u> decision pointed out that the Sentencing Commission chose to make burglary of a dwelling a crime of violence because of its "heightened concern for the harms associated with residential burglaries," 590 F.3d at 1132, because "residential burglaries pose an increased risk of physical and psychological injury," <u>id.</u> at 1130 (quotation marks omitted). As that court explained, "burglary [of a residence] is . . . 'a forcible invasion and disturbance of that right of habitation, which every individual might acquire even in a state of nature.'" <u>Id.</u> (quoting 4 William Blackstone, Commentaries *223); <u>see also</u> <u>id.</u> ("[T]he unique wounds caused by residential burglary are independent of the size or construction of the dwelling. They are the same for the mansion house and the boarding house, the tract home and the mobile home."). And, as the Third Circuit pointed out in <u>McClenton</u>, with burglary of a dwelling "there is a much greater possibility of confronting the resident and a substantial risk that force will be used and that someone will be injured, than if one burglarized a building that was not intended for use as habitation, such as an office building after office hours or a warehouse." 53 F.3d at 588.

That reasoning is true of dwellings, including vessels and conveyances, if they are used or intended for use for human habitation, as much as it is for

dwellings like houses.  For those reasons, we reject the Fourth and Ninth Circuits'

position in favor of the position of the Third Circuit and the five others that agree

with it.  We reiterate more explicitly our earlier decision in Ray:  A generic

dwelling is "a building or portion thereof, a tent, a mobile home, a vehicle or other

enclosed space which is used or intended for use as a human habitation, home or

residence."  See 245 F.3d at 1257 (incorporating McClenton, 53 F.3d at 587).

## B.

With the generic definition of "dwelling" in mind, we apply the categorical

approach to Florida's statute setting out the elements of second degree burglary of

a dwelling.[5]  We have already said in one decision that Florida burglary of an

unoccupied dwelling does not categorically qualify as a crime of violence under a

different guideline's enumerated offenses clause because Florida includes curtilage

in its definition of dwelling.  Matchett, 802 F.3d at 1196–97.  The parties disagree

about whether that statement is a holding (meaning we are bound to follow it) or

dicta (meaning we are not bound by it).  We need not decide one way or the other,

---

[5] We have held that Florida burglary of a dwelling categorically counts as a crime of violence under the career offender sentencing guideline, U.S.S.G. §§ 4B1.1, 4B1.2.  United States v. Matchett, 802 F.3d 1185, 1197 (11th Cir. 2015); United States v. Davis, 881 F.2d 973, 976 (11th Cir. 1989).  But those decisions are not dispositive in this case because they involved § 4B1.2, which has a residual clause that covers offenses that would not count under the enumerated offenses or elements clauses.  Compare U.S.S.G. § 4B1.2 cmt. n.1, with id. § 2L1.2 cmt. n.1(B)(iii).  Their results were based on that residual clause.  Matchett, 802 F.3d at 1197; Davis, 881 F.2d at 976.  Section 2L1.2, by contrast, does not have a residual clause.

because Florida's definition of a dwelling makes its burglary of a dwelling offense broader than the generic definition under § 2L1.2.

Florida defines a dwelling as:

> [A] building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof.

Fla. Stat. § 810.011(2) (emphasis added).  The Florida Supreme Court has said that "some form of an enclosure [is required] in order for the area surrounding a residence to be considered part of the 'curtilage' as referred to in the burglary statute."  State v. Hamilton, 660 So. 2d 1038, 1044 (Fla. 1995).

The United States Supreme Court has decided that Florida's definition of dwelling takes its burglary offense outside the generic definition of burglary under the ACCA.  In James v. United States, 550 U.S. 192, 212, 127 S. Ct. 1586, 1599 (2007), overruled on other grounds by Johnson v. United States, 576 U.S. __, 135 S. Ct. 2551, 2563 (2015), the Court said that "the inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of generic burglary set forth in Taylor, which requires an unlawful entry into, or remaining in, a building or other structure."  (Emphasis in original).  But the James decision was based on the generic definition of burglary under the ACCA, which requires entry into or remaining in a building or structure, while generic burglary of a dwelling

13

under § 2L1.2 requires only entry into or remaining in a dwelling, which can include non-buildings and non-structures.

Although we conclude that the James decision does not bind us in the guidelines context, we come to the same conclusion it did:  Florida's inclusion of curtilage in its definition of dwelling makes its burglary of a dwelling offense non-generic.  Curtilage — defined in Florida as an enclosure around a residence — is not categorically "used or intended for use as a human habitation, home or residence" because it can include the yard and, as the State acknowledges, potentially even outbuildings as long as they are located within the enclosure.  See Henry v. State, 707 So. 2d 370, 373 (Fla. 1st DCA 1998) (holding that curtilage of a structure, which is treated the same as curtilage of a dwelling, includes outbuildings located within the curtilage).

We are not the first circuit to reach this conclusion.  The First and the Fifth Circuits have also held that Florida's definition of dwelling takes its burglary of a dwelling offense outside the generic definition of burglary of a dwelling.  The First Circuit has explained that "[g]eneric burglary of a dwelling requires the dwelling be an enclosed space used or designed for human habitation.  Under Florida's definition of burglary of a dwelling, the building or conveyance must be designed for lodging at night, but the curtilage does not."  Ramirez, 708 F.3d at 304.  It held that Florida's inclusion of curtilage in its definition of dwelling makes it broader

14

than generic burglary of a dwelling under the guidelines. Id. Similarly, the Fifth Circuit has reasoned that "[b]ecause the curtilage is the grounds around the dwelling and is not the dwelling itself, we cannot hold that [the defendant] was convicted of the enumerated offense of 'burglary of a dwelling.'" Gomez-Guerra, 485 F.3d at 304.

We hold that Florida's inclusion of curtilage in its definition of dwelling makes its burglary of a dwelling offense non-generic. Garcia-Martinez's conviction for second degree burglary of a dwelling is not categorically a crime of violence under § 2L1.2.

## C.

Because a Florida conviction for second degree burglary of a dwelling is not categorically a crime of violence, the outcome of this appeal comes down to whether the district court correctly used the modified categorical approach to determine if Garcia-Martinez was convicted of generic burglary of a dwelling. The answer to that question depends on whether the Florida statute defining the crime of second degree burglary of a dwelling lists alternative elements, making it divisible, or instead lists "various factual means of committing a single element," making it indivisible. Mathis, 136 S. Ct. at 2249.

The Florida Supreme Court has already answered that question for us. It has held that "[t]here is no crime denominated burglary of a curtilage; the curtilage is

15

not a separate location wherein a burglary can occur. . . .  Entry onto the curtilage is, for the purposes of the burglary statute, entry into the structure or dwelling." Baker v. State, 636 So. 2d 1342, 1344 (Fla. 1994).  The dwelling and the curtilage are not alternative elements.  Under the Florida statute, entering onto or remaining in the curtilage of a dwelling is just a different means of committing the crime of burglary of a dwelling.  A jury need not agree whether a defendant entered a structure or instead entered curtilage surrounding a structure.  See id.; Mathis, 136 S. Ct. at 2249.  All that a jury must decide, under Florida law, is whether a defendant entered a dwelling, which is a term that encompasses both structures and curtilage.  See Baker, 636 So. 2d at 1344.  Thus, the locational element of Florida burglary of a dwelling is indivisible.  And because that locational element — the residence plus its curtilage — is broader than the generic definition of a dwelling, Florida's second degree burglary of a dwelling offense is non-generic.

The district court erred in applying the modified categorical approach to find that Garcia-Martinez's conviction counted as a crime of violence under § 2L1.2. We vacate his sentence and remand for resentencing.

16

D.

On remand the district court must calculate Garcia-Martinez's advisory guidelines range using the same guidelines that were in effect at his previous sentencing.  See 18 U.S.C. § 3742(g)(1) (stating that where a case is remanded because the district court incorrectly applied the guidelines, "the court shall apply the guidelines issued by the Sentencing Commission . . . that were in effect on the date of the previous sentencing of the defendant prior to the appeal . . . ."); see also United States v. Bordon, 421 F.3d 1202, 1207 (11th Cir. 2005).  We vacate Garcia-Martinez's sentence and remand with instructions to resentence him using the 2014 sentencing guidelines.

**VACATED AND REMANDED.**